### Tom Vaughn v. The State.

No. 22312. Delivered December 2, 1942.

The opinion states the case.

*Baker & Baker* and *R. E. Murphey,* all of Coleman, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged by indictment with the theft of fifteen chickens, alleged to be the property of Gordon Fuller, and by the jury he was convicted and given a term of one year in the penitentiary.

The facts are rather meager. It is shown therein that Gordon Fuller lost some twenty-five or thirty chickens of a cross breed between a White Leghorn and a Rhode Island Red, which cross breeding produced a white chicken with red around its neck. The time these chickens were lost is rather vaguely fixed at about March 3, 1942. About three weeks thereafter Mr. Fuller's testimony shows that he saw some chickens that "looked like" his chickens at the place of a Mrs. Ethel Magison.

On Sunday, March 20, 1942, a State Ranger arrested appellant in front of the court house at Brady, in McCulloch County, without a warrant of arrest therefor, and took him to Brownwood, in Brown County, and placed him in jail. He was left there until Wednesday night, when he was taken to the jail in San Angelo, about 100 miles from Brownwood, at about three or four o'clock in the morning. That evening appellant was returned to Brady and placed in jail. On the following Friday, March 27th, appellant appeared before the district attorney in Brady and made a statement which showed him to be guilty of this offense. The Ranger officer testified that he slapped appellant twice while in his custody, but that he did not mistreat him in any further particular. That appellant was deprived of his boots when placed in the Brownwood jail, but such was done at appellant's request. He testified that no threats were made, and that appellant was taken to San Angelo in order to be talked to by the Ranger Captain whose headquarters were at such place. That there might have been some cursing going on between them. If appellant did make a statement it was all right; the Ranger was interested in him making such, but he did not threaten him in any way.

The district attorney who took the statement testified that everybody seemed in a good humor while the statement was

being made, and no threats of any kind were made. However, the appellant did tell the attorney, when referring to the statement, to put down anything he wanted to and "I will sign it," which the attorney refused to do.

Appellant tells a story of threats, violence and refusals to allow him to see anyone, of being moved from jail to jail, and general mistreatment by the Ranger to such an extent that he made the statement under fear of violence or death. He repudiated the statement in toto, and offered evidence of an alibi. The party who lost the chickens reiterated his belief in appellant's innocence, and the lady with whom appellant's statement claimed the stolen chickens were left claimed all such chickens as her own and as raised by her. Mr. Fuller did not identify the chickens; he only claimed that they looked like and resembled his chickens.

The conviction of appellant must depend alone upon the statement made by him under the circumstances above outlined.

The sole bill of exceptions complains of the fact that upon the proffering of appellant's statement in the trial appellant's attorney objected to the same, suggesting its involuntary character, and requested the trial court to retire the jury for the purpose of hearing testimony thereof in order to determine what course to pursue relative to the introduction of such statement. This the trial court refused to do, and such matter was then gone into in the presence of the jury; and the voluntary character of such statement was afterwards submitted to the jury, they being instructed to disregard the same unless they believed same to have been voluntarily made without threats, coercion or intimidation.

Ordinarily the admissibility of a written confession is a matter of law for the trial court, Thompson v. State, 90 Tex. Cr. R. 15, 234 S. W. 401; Harris v. State, 64 Tex. Cr. R. 594, 144 S. W. 232, and the better policy would have been for the trial court to have inquired into the same out of the presence of the jury.

Although the voluntariness of this confession was submitted to the jury and they were instructed to disregard the same unless they believed beyond a reasonable doubt that same was voluntarily made without coercion, intimidation, etc., neverthe-

less we think the State's own testimony shows, as a matter of law, that such statement was brought about by means of violence and fear practiced upon the appellant. The Ranger admits that he twice slapped appellant; that he cursed him; that he arrested him without warrant, and moved him to the Brownwood jail, to the San Angelo jail, and back to the Brady jail, where he was originally taken into custody, all without taking him before a magistrate as commanded to do by the statute, Art. 217, C. C. P. The evidence shows that appellant was kept practically incommunicado for about five days, and upon the sixth day we find appellant before the district attorney, willing to sign anything that they might put before him in the statement.

We think the case of Abston v. State, 102 S. W. (2d) 428, is authority for the holding that such statement brought forth under the violence shown by the State, disregarding appellant's testimony, was sufficient to show its voluntary character, and such should not have been received in evidence.

Thus believing, this judgment is reversed and the cause remanded.